*476 The opinion of the court was delivered by
Valentine, J.:
This was an action on a life-insurance policy. The petition in the court below, after the title, reads as follows:
“Edward E. Twining and Emma A. Twining, infants, (who prosecute by their next friend Moses McMillan,) and Mary E. Twining, plaintiffs, show to the court that the defendant is a corporation, created by and under the laws of the state of Missouri, and having an office, and doing business within the state of Kansas, and duly empowered by law to do the business of life insurance within said state of Kansas: That on the 15th of October 1870, at St. Louis, to-wit, at Lawrence, in the state of Kansas, in consideration of the payment of $156.50, by one Lewis Twining, then of said city of Lawrence, and also in consideration of the application of said Twining, thereupon made, the said defendant, the Mound City Mutual Life Insurance Company, issued and delivered to him the said Lewis Twining their policy of life insurance upon the life of him the said Lewis, a copy of which said policy is hereto attached, marked ‘A,’ and made a part' of this petition, and thereby they, the said defendants, insured the life of said Lewis in the sum of five thousand dollars, payable to the legal heirs of said Lewis, or to his assigns : That the plaintiffs in this action are the legal heirs of him the said Lewis Twining: That on the 24th of October 1871, said Lewis Twining died, at the city of Topeka, in the state of Kansas, from natural causes, and not from his own hand, nor in consequence of any duel, nor by reason of the violation of any law of any state, nation or province: That said Lewis did not after the issuing of said policy of insurance violate any of the conditions thereof, but lived within the state of Kansas, and followed the occupation of dealer in patent-rights: That the said Lewis, on the 19th of January 1871, paid to said defendant the sum of $156.50, in full of the first annual premium on said policy of insurance, and otherwise duly observed and fulfilled all the conditions of said policy, and that after the death of said Lewis, and on the 13th of March 1872, due proof of such death was made to the said defendant, and deposited in its office, according to the terms and conditions of said policy: That no part of said sum of $5,000 has been paid, and that there is now due to these plaintiffs from the defendant herein, on account of *477 the premises, the sum of $5,000 with the interest thereon since June 11th, 1872, for which sum the plaintiffs demand judgment, with costs.”
The answer of the defendant filed in the court below reads, after the title, as follows:
“ The said defendant, for answer to the plaintiffs’ petition, admits the making and delivering of the policy of insurance in plaintiffs’ petition’ contained and set forth, but denies each and every other allegation contained in plaintiffs’ petition. Wherefore said defendant asks judgment against said plaintiffs.”
The following evidence was introduced on the trial in the district court. First, a copy of the policy sued on, as follows :
“Mound City Mutual Life Insurance Company of St. Louis, Mo. — Age, 40. — Number, 2720. — Amount, $5,000. — Premium, $156.50 annually.— Premium payable October 15th, each year.
“ In consideration of the representations made to them in the application for this policy of insurance, and of the annual premium of $156.50, to be paid on or before the 15th of October in each and every year during the continuance of this policy, the first of the said annual premiums falling due on the 15th day of October, 1870, do hereby insure the life of Lewis Twining of Lawrence, county of Douglas, state of Kansas, for the use and benefit of his legal heirs or assigns, of-, county of-, state of-, in the amount of five thousand dollars. And the said Company does hereby agree to pay the said sum insured to the above-mentioned beneficiaries, or to their legal representatives, within ninety days after due notice and satisfactory proof of the death of the said assured shall have been deposited in the office of the said Company, deducting therefrom the loans or other indebtedness due the said Company. And it is further agreed, that if the first annual premium shall have been fully paid to this Company, and default shall be made in the payment of any premium thereafter to become due and payable, then such default shall not work a forfeiture of this policy, but if it be surrendered within thirty days after the date of such default this Company will, in consideration thereof, issue a paid-up policy, payable as hereinbefore provided, for the amount which' could be bought by the net value of this policy, (the value to be determined on the basis and assumptions contained *478 in section 29 of an act of the state of Missouri, entitled, ‘An act for the regulation of Life Assurance/ approved March 10th, 1869,) considered as a gross single premium, according to the single-premium rates of this Company. And it is expressly understood, that the sum of all loans, or other indebtedness due to this Company, shall be first deducted from the amount of such net value. And it is further understood and agreed, that the said assured may, at any time, by the usual modes of conveyance, travel to and from any portion of the United States, British Provinces, Canada or Europe. If) however, the person whose life is hereby insured shall engage on any railroad, as locomotive engineer, fireman, or as brakeman, or personally engage in blasting, mining, submarine operations, or the production of highly inflammable or explosive substances, or enter the military or naval service, (the militia when not in active service excepted,) without the consent of this company in writing first had and obtained, or die by or in consequence of engaging in a duel, or in known or willful violation of any law of this or any other country, or if any material fact respecting the health or habits of the assured shall have been willfully and intentionally misstated or suppressed in the application for this policy of insurance, and on the faith of which the policy is issued, then this policy to be null, void, and of no effect. (And the said-hereby acknowledge to have received a loan of-dollars, being one-third the annual premium on this policy, and that a similar loan is made on all the future annual premiums, said loans to remain a lien on said policy until paid or canceled by dividends, and to bear interest at the rate of-per cent. per annum, payable in advance.) Proof of interest in life of said assured must be deposited with proof of death. Should this policy be assigned, or held as security, written notice of such assignment and transfer must be given to this Company.
“This policy to take effect and become binding on said Company, only when the first annual premium shall have been paid to Stevens & Anderson, Agents, at 'Lawrence, Kansas, whose receipt below shall be evidence of the same. In witness wh'ereof,” etc.
“Received of Lewis Twining of Lawrence, county of Douglas, state of Kansas, the first annual premium on this policy, -this 19th day of January, 1871.
“Stevens & Anderson, Agents.”
0» the back of said policy is an indorsement showing that *479 the policy was “Filed December 4th, 1872,” and the following' printed notice to policy-holders:
“Notice to Policy Holders. — Payments of Premiums.— Renewal Premiums may be paid to an Agent, but only bn the production of a receipt signed by the President or Secretary, who are alone authorized to sign receipts on the part of the Company. When receipts are delivered to a policy-holder by an Agent, such Agent should countersign the same, as an evidence of payment to him.
“Powers of Agents. — Agents are hot authorized to make, alter, or discharge contracts, waive forfeiture, or bind the Company in any way; their duties being simply the reception and transmission of applications for policies and premiums, under the rules and instructions laid down in their letters of appointment. Agents of the Company are not, under any circumstances, authorized to write the receipt of premiums, or make any indorsement on the policy.
“Restoration of Forfeited Policies. — The Company may, but solely as an act of grace or courtesy, and when the interest of the Company will not be impaired in any way thereby, restore a forfeited policy. When a restoration is applied for, the application must invariably be accompanied by a certificate as to the health of the person whose life was insured, and at his expense, from a physician acceptable to the Company. In all cases of restoration of forfeited policies, and in all cases where the premium is received after the day on which it became due, and' after the expiration of the thirty days grace, although the policy may not' have been formally canceled on the Company’s books, the renewal or revival of the Policy, in whatever form made, will be (in accordance with the decision of the Commissioner of Internal Revenue,) subject to stamp tax, the same as if a new policy had been issued, and the new stamp must be paid for by the policy-holder.
“Alteration of Policies.— Changes in the manner of paying premiums, (as from yearly to half-yearly, or quarterly, or the reverse,) can be made; but when such a change is required by a policy-holder, the policy must be forwarded to the office of the Company for the requisite indorsement. When a policy is altered at the request of the holder, the revenue stamps required in the new form must be paid for by him. A change of interest in a policy can only be made on the written- request of the legal owner of the policy, and with the consent of the Company.
*480 “Assignments. — A wife cannot legally assign a policy drawn in her favor — a husband cannot assign a policy to his wife. When a policy is assigned, written notice of such assignment must be given to the Company, for registration on its books. All assignments, to be valid, require a revenue stamp, equal in value to that on the policy, and the cost of such stamp must be borne by the policy-holder.
“Proofs of Loss. — In the event of the death of a person assured, application should be made to the Company for a blank form of ‘ proof of death.’ This form contains affidavits to be made by the attending physician of the deceased, by a friend present at the time of death, by the undertaker having charge of the interment, and by the person to whom the policy is payable. These proofs should be properly filled up and forwarded to the Company, and if found satisfactory, payment of the policy will be made by check, or to the order of the legal holder of the policy, sixty days after the proofs shall have been received by the Company, on surrender of the policy duly receipted. Ordinarily, if desired, policies will be discounted as soon as the proofs of death have been approved by the Company.”
To which policy was attached the following stipulation, signed by the attorneys for plaintiffs and defendant, to-wit :
(Title of Action.) “ It is hereby stipulated, that the annexed is the policy of insurance issued by defendant, and referred to in the petition in this action, and that no other payment has been made thereon than the one mentioned, and thereon indorsed, of $156.50, paid January 19th, 1871, which was to pay the premium to October 15th, 1871, as expressed in said policy. That except as to the allegation of other payments, and as to any difference between the policy hereto attached and the one set forth in the plaintiffs’ petition, all the other allegations of fact in said petition are true, and this stipulation, the said policy, and the petition in this action, shall be the evidence therein on trial of the same. Dated, September 30th, 1872.”
This was all the evidence introduced on the trial. The court below made special findings of fact and conclusions of law. But as the evidence was all agreed to, nearly all documentary, and all really one way, it is not necessary to give either the findings of fact or the conclusions of law. We believe the facts were found correctly, and in accordance with *481 the foregoing evidence; but the court erred in its conclusions of law, and erred in its judgment. The conclusions of law were in favor of the plaintiffs below, and in favor of rendering a judgment in their favor for $5,225.36.
The whole question of the liability of the defendant below, and the amount of that liability, depends entirely upon a proper construction of said policy. In construing said policy we must of course consider the policy itself, and all the indorsements thereon made by the parties thereto, or assented to by them. Viewing the policy in this light, or even viewing it without the indorsements, and we think there is not much room for mistaking the intention of the parties, so far as the same affects this case; and the intention of the parties to a contract is always the soul and spirit of the contract. It is the intention of the parties that courts should endeavor to ascertain, and it is the intention of the parties that courts. ought to endeavor to carry out. Of course, the language of said policy might be plainer and more elaborately descriptive of the intention of the parties; but still we think it is plain enough to be easily understood, so far as it affects this case. We construe said policy as follows: The insurance company agreed, on the payment of the first annual premium, to insure the life of said Lewis Twining for the following amounts and upon the following conditions, to-wit: First, until said Twining should make default in the payment of some annual premium, (which was to become due on October 15th of each year,) his life was to be insured for the amount of $5,000. Second, after such default should be made (if ever made) said life was to be insured for an amount equal to the amount of a paid-up policy, such as could be bought by the net value of the policy we are now considering, (the value to be determined on the basis and assumptions contained in section 29 of an act of the state of Missouri, entitled “An act for the regulation of life assurance,” approved March 10th, 1869,) considered as a gross single premium, of said insurance company : provided, that all indebtedness to the company should first be deducted from said net value, and provided further *482 that this policy should be surrendered to the company within thirty days after said default, so that a full-paid policy could be issued. If however, default should be made as aforesaid, and if the policy should not be surrendered as aforesaid to the company within thirty days, then would there be any insurance? and if so, what would be the amount? It is not necessary for us to answer these questions, for they are not in this case.
In the present case the life of Lewis Twining was insured from January 19th 1871, up to October 15th 1871, for the amount of $5,000. After that time, and up to the time of his death, which occurred October 24th 1871, his life was insured for an amount equal to the amount of a full-paid policy such as could have been purchased by an amount equal to the amount of the net value of the. policy he then had. And this amount, for which his life was insured after October 15th 1871, is the amount for which his heirs, the present plaintiffs, are now entitled to recover. The evidence in the present case does not show what that amount in dollars and cents would be. From the foregoing it will be observed that the court below erred in its conclusions of law, erred in its interpretation of said policy, erred in not granting the defendants a new trial as prayed for, and erred in the judgment it rendered. The judgment of the court below is therefore reversed, and cause remanded for a new trial.
All the Justices concurring.