## MOUND CITY MUTUAL LIFE INSURANCE CO. v. EDWARD E. TWINING, et al.

1. MOTION FOR NEW TRIAL; *When Filed in Time, May be Heard at Subsequent Term.* This case was tried by the court without a jury. Afterward, and on the 26th of July 1875, the court made special findings of fact and conclusions of law, and upon such findings and conclusions rendered judgment in favor of the plaintiffs and against the defendant. On the same day the defendant filed a motion for a new trial, but on the same day the court adjourned *sine die* without taking any action upon said motion for a new trial. *Held,* That said motion did not become defunct by reason of said adjournment, but was continued to the next term of the court.

2. CASE-MADE; *Time for Making; Extending Time.* A case may be made for the supreme court and served upon the opposite party at any time within three days after an order is entered overruling a motion for a new trial, although such order may not be entered at the same time that the judgment in the case is rendered, nor even until the next term thereafter; and the court may on entering said order extend the time still further for making and serving a case for the supreme court.

3. LIFE INSURANCE; *Non-Forfeiting Policy; Premium.* The decision in the case of *Life Insurance Co. v. Twining,* 12 Kas. 475, regarding the liability of the insurance company, the terms of its policy, and the non-payment of premiums at maturity, reaffirmed and followed.

4. —— *Methods of Insurance; Option of Assured.* Where an insurance company publishes that, in order to prevent forfeitures, and to save policies from lapsing, it has adopted two methods of insurance, between which policyholders may choose, and T. procures from the said company an insurance on his own life for the benefit of his heirs, and in doing so takes and receives a policy giving to him the benefit of one of said methods, and not of the other, *held,* that T., in taking and holding said policy, chooses one of said methods, and that his heirs cannot after his death abandon that method and choose the other.

5. —— *Payment of Premiums When Due; Default; Custom; Waiver of Time.* Where the local agent of an insurance company adopts the custom of receiving premiums, due his company, at any time up to the first of the month next after they become due, and T. at the time holds an incorrect policy in said insurance company, and the agent in order to induce T. to take a corrected policy from the company informs T. of such custom, and tells him that if he take such new policy and pay his annual premiums at any time up to the first of the month next after they become due, it will be sufficient, and also gives to T. a circular published by the company stating, "Thirty days grace allowed in payment of premiums,"

and T. takes such new and corrected policy by the terms of which the annual premiums become due on the 15th of October of each year, and on said policy is an indorsement stating in effect that the agents of the company have no authority to waive anything for the company, and this particular agent does not in terms have any such authority, and said agent again, and after said second policy is issued, makes the same statement to T. which he made prior thereto with regard to said custom, and with regard to receiving said premiums after they became due, and also thereafter gave T. other copies of said circulars, and the assured dies on October 24th, nine days after the second annual premium becomes due, and said second annual premium is never paid, *held*, that it must be presumed that the insurance company has knowledge of said custom of its agent and adopted the same as its own custom, and therefore that the company itself waived the payment of premiums within the strict time prescribed by the policy; and therefore, that as the assured died before the first of the month next after said premiums become due the beneficiaries may recover the amount of the insurance, less the amount of said second annual premium.

### Error from Douglas District Court.

THE necessary facts, pleadings, and proceedings are fully stated in the subjoined opinion. The district court, at July Term 1875, gave judgment for plaintiffs for $4,833.10, besides interest and costs, and the *Insurance Company* brings the case here on error for review.

*Nevison & Alford,* for plaintiff in error.

*Solon O. Thacher,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This case was once before in this court; (12 Kas. 475.) At that time the judgment of the court below was reversed, and cause remanded for a new trial. On its return to the court below the parties filed new pleadings. The new petition filed by the plaintiffs reads as follows:

(*Title.*) "The plaintiffs show to the court that the defendant is a corporation created under the laws of the state of Missouri, and having an office and doing business within the state of Kansas, and duly empowered by law to do and transact the business of life insurance within the state of Kansas; that on the 3d of October 1870, one Lewis Twining,

then of Lawrence, Kansas, applied to Stevens & Anderson, the duly-constituted general agents of the defendant in the business of insurance at Lawrence aforesaid, for a policy of insurance upon the life of him the said Twining; that said application was in writing, and was by the said agents of said insurance company forwarded to said company for their acceptance or rejection on the 18th of October 1870; that the said insurance company accepted said application, and forwarded their policy of insurance to their said agents on the 23d of said October, and that said agents on the 24th of said October delivered the said policy to the said Twining, as a contract of insurance on the part of said defendant; and the said Twining thereupon, and on said 24th of October, paid to said Stevens & Anderson for the said defendant the sum of $150.95 as and for one year's premium of insurance upon the life of the said Twining, which was so accepted by the said Stevens & Anderson in behalf of the said defendant; and thereupon a contract of insurance was effected upon the life of the said Twining for one year from that date, and for the period of his life upon the payment of the like sum annually as a premium therefor, in pursuance of the terms and conditions of said policy of insurance which were the same terms and conditions contained in the policy of insurance, a copy whereof is annexed to this petition.

"And said plaintiffs further show, that afterward, and on the 19th of January 1871, the said Lewis Twining delivered up to the said defendant the aforesaid policy which was issued to him of an incorrect age of thirty-nine years, and under agreement with the defendant took from defendant another policy of which the annexed, marked 'Schedule A,' is a true copy, and which copy is made a part of this petition; that said Twining at the time of the delivery of said last-mentioned policy of insurance paid therefor to the defendant the additional sum of $5.55; that said defendant, notwithstanding said contract was entered into on the 24th of October 1870, and the contract was to insure for the life of said Twining from that date, and the premium paid at that date was a full premium for insurance for one year from that time, inserted in the said policy that said premium was to be paid annually on the 15th of October in each year, and assured said Twining and gave him to understand that said policy was non-forfeit-able by reason of any failure to pay premium thereon at the time the same became payable by the terms of said policy,

and also held out and gave said Twining to understand and believe that if he paid said annual premium provided for in said policy on or before the first of the month next after the said 15th of October, it would be as effectual as though paid promptly on said October 15th in each year, and waived the payment of said premium as provided in said policy, and gave time for the payment thereof until the first of the month thereafter.

"And plaintiffs further show, that they are the heirs-at-law and legal representatives of said Lewis Twining, and the persons for whose benefit the said policy of insurance was delivered; that said Twining died at the city of Topeka on the 24th of October 1871, from natural causes, and not from his own hand, nor in consequence of any duel, nor by reason of the violation of any law of any state, nation or province; that said Twining did not, after the issuing of said policy of insurance, violate any of the conditions thereof, but lived in the state of Kansas and followed the occupation in said policy mentioned; that after the death of the said Lewis Twining, and on the 13th of March 1872, due proof of loss under said policy was made and served upon the said defendant according to the terms and conditions of said policy; that no part of said sum of five thousand dollars secured by said policy has been paid by said defendant, but that the whole amount thereof is now due from said defendant to these plaintiffs.

"The plaintiffs demand judgment for $5,000, with interest thereon from June 11th 1872, and costs."

"SCHEDULE A.

"*Mound City Mutual Life Insurance Company, of St. Louis, Mo.-Age, 40.—Number 2720.—Amount, $5,000. Premium, $156.50 annually.—Premium payable October 15th, each year.*

"In consideration of the representations made to them in the application for this policy of insurance, and of the annual premium of $156.50, to be paid on or before the fifteenth day of October in each and every year during the continuance of this policy, the first of the said annual premiums falling due on the 15th day of October 1870, do hereby insure the life of Lewis Twining, of Lawrence, county of Douglas, state of Kansas, for the use and benefit of his legal heirs or assigns of ——, county of ——, state of ——, in the amount of five thousand dollars. And the said company does hereby agree to pay the said sum insured to the above-mentioned bene-

ficiaries or their legal representatives within ninety days after due notice and satisfactory proof of the death of the said assured shall have been deposited in the office of the said company, deducting therefrom the loans or other indebtedness due the said company. And it is further agreed, that if the first annual premium shall have been fully paid to this company, and default be made in the payment of any premium thereafter to become due and payable, that such default shall not work a forfeiture of this policy, but if it be surrendered within thirty days after the date of such default, this company will, in consideration thereof, issue a paid-up policy, payable as hereinbefore provided, for the amount which could be bought by the net value of this policy, (the value to be determined on the basis of assumptions contained in section 29 of an act of the state of Missouri, entitled 'An act for the regulation of life assurance,' approved March 10th 1869,) considered as a gross single premium, according to the single-premium rates of this company. And it is expressly understood, that the sum of all loans or other indebtedness due this company shall be first deducted from the amount of such net value. And it is further understood and agreed, that the said assured may at any time by the usual modes of conveyance travel to and from any portion of the United States, British Provinces, Canada, or Europe. If however, the person whose life is hereby insured shall engage on any railroad as locomotive engineer, fireman, or as brakeman, or personally engage in blasting, submarine operations, or the production of highly-inflammable or explosive substances, or enter the military or naval service, (the militia when not in active service excepted,) without the consent of this company in writing first had and obtained, or die by or in consequence of engaging in a duel, or in known and willful violation of any law of this or any other country, or if any material fact respecting the health or habits of the assured shall have been willfully and intentionally misstated or suppressed in the application for this policy of insurance, and on the faith of which the policy is issued, then this policy to be null and void and of no effect.

"And the said —— hereby acknowledge to have received a loan of —— dollars, being one-third the annual premium on this policy, and that a similar loan is made on all the future annual premiums, said loan to remain a lien on said policy until paid or canceled by dividends, and to bear interest at the rate of —— per cent. per annum, payable in ad-

vance.  Proof of interest in life of said assured must be deposited with proof of death.

"Should this policy be assigned, or held as security, written notice of such assignment and transfer must be given to this company.  This policy to take effect and become binding on said company, only when the first annual premium shall have been paid to Stevens & Anderson, agents, at Lawrence, Kansas, whose receipt below shall be evidence of the same.

"In witness whereof, the said Mound City Mutual Life Insurance Company has hereunto affixed its corporate seal, and caused these presents to be signed by its President, or Vice-President, and Secretary, this fifteenth day of October 1870.        A. M. BRITTON, *Vice-President.* [SEAL.]

"S. W. LOMAX, *Secretary.*

"Received of Lewis Twining, of Lawrence, county of Douglas, state of Kansas, the first annual premium on this policy, this 19th day of January, 1871.

"STEVENS & ANDERSON, *Agents.*

"Edition of May 1869. [Annual Life Policy—non-forfeiting after payment of one annual premium.] Lewis Twining delivered up policy in regard to age, 39 years, and took this corrected policy of right age, 40 years.

"STEVENS & ANDERSON, *Agents.*"

On the back of said policy is the following printed notice to policy-holders:

"NOTICE TO POLICY-HOLDERS.—*Payments of Premiums.* Renewal premiums may be paid to an agent, but only on the production of a receipt signed by the president or secretary, who are alone authorized to sign receipts on the part of the company.  When receipts are delivered to a policy-holder by an agent, such agent should countersign the same, as an evidence of payment to him.

"*Powers of Agents.*—Agents are not authorized to make, alter, or discharge contracts, waive forfeiture, or bind the company in any way; their duties being simply the reception and transmission of applications for policies and premiums, under the rules and instructions laid down in their letters of appointment.  Agents of the company are not under any circumstances authorized to write the receipt of premiums, or make any indorsement on the policy.

"*Restoration of Forfeited Policies.*—The company may, but solely as an act of grace or courtesy, and when the interest of the company will not be impaired in any way thereby, restore a forfeited policy. When a restoration is applied for, the application must invariably be accompanied by a certificate as to the health of the person whose life was insured, and at his expense, from a physician acceptable to the company. In all cases of restoration of forfeited policies, and in all cases where the premium is received after the day on which it became due, and after the expiration of the thirty days' grace, although the policy may not have been formally canceled on the company's books, the renewal or revival of the policy, in whatever form made, will be (in accordance with the decision of the commissioners of internal revenue,) subject to stamp tax, the same as if a new policy had been issued, and the new stamp must be paid for by the policyholder.

"*Alteration of Policies.*—Changes in the manner of paying premiums, (as from yearly to half-yearly, or quarterly, or the reverse,) can be made; but when such a change is required by a policy-holder, the policy must be forwarded to the office of the company for the requisite indorsement. When a policy is altered at the request of the holder, the revenue stamps required in the new form must be paid for by him. A change of interest in a policy can only be made on the written request of the legal owner of the policy, and with the consent of the company.

"*Assignments.*—A wife cannot legally assign a policy drawn in her favor. A husband cannot assign a policy to his wife. When a policy is assigned, written notice of such assignment must be given to the company, for registration on its books. All assignments, to be valid, require a revenue stamp, equal in value to that on the policy, and the cost of such stamp must be borne by the policy-holder.

"*Proofs of Loss.*—In the event of the death of a person assured, application should be made to the company for a blank form of 'proof of death.' This form contains affidavits to be made by the attending physician of the deceased, by a friend present at the time of death, by the undertaker having charge of the interment, and by the person to whom the policy is payable. These proofs should be properly filled up and forwarded to the company, and if found satisfactory, payment of the policy will be made by check, or on the or-

der of the legal holder of the policy, sixty days after the proofs shall have been received by the company, on surrender of the policy duly receipted. Ordinarily, if desired, policies will be discounted as soon as proofs of death have been approved by the company."

The new answer filed by the defendant to said new and amended petition of the plaintiffs, after caption and title reads as follows:

"The said defendant for answer to the amended petition of the plaintiff in this action says: That it is not true and therefore denies that on the 3d day of October 1870, or at any other time, the said Stevens & Anderson, mentioned in said petition, were the general agents of the said defendant, in the business of insurance, at Lawrence, or in any other business or at any other place. The said defendant also denies that said application for insurance was forwarded to said defendant for its acceptance or rejection on the 18th of October 1870, or that defendant accepted said application, and forwarded its policy of insurance to its agents on the 23d of October 1870, or that said agents on the 24th of October 1870 delivered the said policy to the said Lewis Twining, or that said Twining on the 24th of October 1870 paid to said Stevens & Anderson for the said defendant the sum of $150.95, or any other sum, as and for one year's premium upon the life of said Twining, or for any other purpose, or that a contract of insurance was then effected upon the life of said Lewis Twining for one year from that date, or for any other time or date. The said defendant says, that on the 3d day of October 1870, said Lewis Twining made said application for insurance to said defendant, and which application for insurance was received by the said defendant prior to the 15th of October 1870, and that on said 15th of October said application for insurance of the said Lewis Twining was duly accepted, and the policy of insurance above mentioned was on that day executed and delivered by defendant to said Lewis Twining, and that said Lewis Twining on that day paid to said defendant the said sum of $150.95 as and for the first annual premium on the life of the said Twining as mentioned in said policy of insurance, which said sum was on that day paid by said Twining for the purpose of and accepted by said defendant as a payment for one year's premium of insurance upon the life of said Twining, from the 15th of October 1870 — the said Twining thereby receiving an insurance on his life

by the defendant for one year from October 15th 1870, and for the period of his life, upon the payment on the 15th of October of each year thereafter the sum of $150.95, provided the statements and representations in his said application were true in all respects, which was made a condition to acceptance of said application, which said policy is the one first mentioned in plaintiffs' said amended petition, and which was the only policy issued by the defendant to said Twining prior to the issue of the policy of which a copy is attached to said petition.

"The defendant further says, that said Twining in his application for insurance on the 3d of October 1870 aforesaid, stated his age at his nearest birthday to be thirty-nine years, whereas at his nearest birthday to that time he was forty years of age, which fact was not known to the defendant until about the 10th of January 1871, when the said Twining then agreed with the defendant to surrender the policy he then had, and pay to the defendant the further sum of $5.55, (said sum being the additional amount he would have been compelled to have paid had he given his true age on the 3d of October 1870,) and take a new policy of insurance on his life for the same sum, to-wit, $5,000, to be dated October 15th 1870, and instead of paying the sum of $150.95, thereafter, annually on the 15th of October, to pay the sum of $156.50, on the 15th of October annually thereafter, and the policy to be issued as aforesaid, upon the life of said Twining should require him to pay as an annual premium the sum of $156.50, on the 15th of October annually thereafter during the life of the said Twining. In pursuance of said agreement said Twining, on the 19th of January 1871, surrendered to this defendant the policy first above described, and paid to said defendant the said sum of $5.55, and no more; he having paid said sum of $150.95 to the defendant on the 15th of October 1870, as specified in the policy first above mentioned; and the defendant did on said 19th of January 1871, deliver to said Twining the policy of insurance on which this action is brought, a copy of which policy is attached to said petition.

"The said defendant for further answer to said amended petition denies that there was any contract or agreement made between the said Twining and said defendant on the 24th of October 1870, or that defendant ever agreed to insure the life of said Twining for the term of one year from that date, or that said Twining paid on that day any money whatever,

or that said Twining on that day or any other time paid to said defendant any money to pay premium for insurance on his life for one year from the 24th of October 1870, or that the date on which the premium was to be paid by said Twining to said defendant was inserted in said policy so as by the terms thereof to require the payment on a different day than the day agreed upon between the said Twining and said defendant.

"The said defendant for further answer to said amended petition, denies that it ever made any statements or representations to said Twining as to the nonforfeitable condition of the policy, or of any matter in relation thereto, other than those printed on or contained in the policy, a copy of which is attached to plaintiff's amended petition.

"The said defendant further denies that it ever held out or gave said Twining to understand or believe, that if he paid said annual premium provided for in said policy on or before the 1st of the month after said 15th day of October, it would be as effectual as though paid promptly on said October 15th in each year, or that it ever gave him to understand anything to that effect, or that said defendant ever waived or gave said Twining to understand or believe that it waived the payment of said premium as provided for in said policy, or gave time for the payment thereof until the first of the month thereafter.

"Said defendant for further answer to said amended petition denies that said Lewis Twining did not after the issuing of said policy of insurance violate any of the conditions thereof. Said defendant says that said Twining did violate the conditions of said policy in not paying the annual premium when the same by the terms and conditions of said policy became due, whereby said policy at the time of the death of said Twining had become and then was forfeited and void."

This answer was duly verified by affidavit. The plaintiff in reply thereto filed a general denial, not verified in any manner. A trial was then had upon these pleadings before the court, without a jury. Evidence was introduced of which we shall speak more fully hereafter. Afterward, on the 26th of July 1875, the court made special findings of fact and conclusions of law, which findings and conclusions read as follows:

FINDING OF FACTS.—1st. The defendant, the Mound City Mutual Life Insurance Company of St. Louis, Mo., is a corporation created under the laws of the state of Missouri, to do the business of life insurance. Through circulars published prior to the 3d day of October 1870, it advertised some of its features as, "Thirty days grace allowed in payment of premiums;" and, "All policies non-forfeitable after one annual premium is paid." Under the last-quoted feature two methods were stated to be in use by the company, between which policy-holders could choose.

2d. By the first method, called "paid-up policies," explained in the circular hereinbefore referred to, the policy-holder, on the annual life plan, after the payment of one annual premium, could within thirty days after failure to pay a premium surrender his policy and receive a paid-up policy for an amount which the net value of the surrendered policy at date of lapse, computed on the four-and-a-half per cent. American mortality basis, considered as a single premium of insurance, would purchase, according to the company's single-premium rates.

3d. By the second method, called "temporary insurance," explained in the circulars hereinbefore referred to, if the policy-holder on the annual life plan, after payment of one annual premium, should not be able to meet his renewal payments, his policy would be continued in force so long as four-fifths of its net value computed as before, considered as a single-premium "temporary insurance," would carry it, and then it would lapse, so that if death ensued within this period the policy (less the foreborne premiums with ten per cent. interest) would be paid in full.

4th. The defendant published, for the government of its agents, and gave to them, printed instructions to the effect that no policy should be delivered thirty days from its date; no policy should be in force until the premium was paid; the receipts for the renewal premium should be delivered only on payment of the premium on or before the day it is due, or within thirty days thereafter, but not afterward; a book would be furnished in which to register all policies and renewal receipts sent to them for collection; to remit all premiums promptly, and to remit in full all moneys in their hands on the first of every month.

5th. In 1869 the defendant employed one Alvin B. Hard, at Lawrence, in Douglas county, as its agent to solicit appli-

cations and collect premiums for insurance, and furnished him advertising circulars—among others, copies of the one hereinbefore referred to; also, blanks, and a book with the following printed on the top margin of the pages: "*Mound City Mutual Life Insurance Company of St. Louis, Mo.— Policy Register at —— Agency.*" On each page were ruled columns, with printed headings designating the entries to be made in each. In this book the agent registered each policy received in the course of his business.

6th. About the middle of September 1870, one William Henry, before that time employed by the defendant as a special agent to solicit applications and collect premiums for insurance in any state or county he might be sent into, came to Lawrence, in Douglas county, and assumed control of, and succeeded to, and undertook the completion of the business before that time intrusted to agent Hard, from whom he received the book called the "Policy Register," and the circulars and blanks on hand, and was from that time the only authorized agent of the defendant at Lawrence until succeeded by Stevens & Anderson.

7th. On the 3d of October 1870, at the solicitation of agent Henry, one Lewis Twining made application for insurance. The application was sent to the home office at St. Louis, Mo., where, on the 15th, it was approved and a policy of life insurance issued on the annual life plan, on the life of the applicant, for five thousand dollars, and forwarded to the solicitor, who delivered it to the insured on the 24th of the same month, and received $150.95 in full payment of the first all-cash premium for one year's insurance, and $1.50 policy fee and stamp, as shown by the policy and entries on the policy-register, which the defendant required its agent to keep.

8th. On 28th of December 1870, the defendant employed Stevens & Anderson as its agents to transact its business in Douglas county. They had an office convenient of access on a principal street in Lawrence, where the policy-holders and other persons from whom they were soliciting insurance were frequent visitors, amongst whom they distributed the circulars hereinbefore referred to, and to whom they stated their custom to be not to require payment of renewal premiums before the last day of the month within which they became due; and we are informed by Stevens that this statement was expressly made by Stevens & Anderson to Lewis Twining.

9th.  Afterward it was ascertained that Twining had mis-stated his age in his application for insurance; that he had represented his age as thirty-nine years at nearest birthday, when in fact it should have been stated at forty, and accordingly, at his own request, the error in his application was corrected, and on the 10th of January 1871 another policy was issued as of the same date as the former one, and forwarded to Stevens & Anderson who delivered it to the insured on the 21st of the same month, and received as increased premium for one year's insurance on account of difference in age, $5.55.   This policy is the one sued on, and described in plaintiffs' petition.

10th.  By the terms of the corrected policy it appears that in consideration of the representations made in the application for insurance, and of the annual premium of $156.50, to be paid on or before the 15th of October in each year during the continuance of the contract, the first of the annual premiums falling due on the 15th of October 1870, (the date of the original policy, and the date it was executed at St. Louis, Missouri,) the defendant insured the life of Lewis Twining for the use and benefit of his legal heirs or assigns, in the amount of five thousand dollars, conditioned that the policy should take effect and be binding only when the first annual premium should be paid to its agents named therein.

11th.  It was a condition of the policy, that if default should be made in the payment of any premium subsequent to the first, such default should not work a forfeiture of the policy; but if it was surrendered within thirty days thereafter, the defendant would, in consideration thereof, issue a paid-up policy for an amount which could be bought by the net value of the surrendered policy (the value to be determined on the basis and assumptions contained in section 29 of an act of the state of Missouri, entitled "An act for the regulation of life assurance," approved March 10th 1869,) considered as a single premium, according to the defendant's single-premium rates.   These rates were published in the circulars referred to.

12th.  Under the provisions of section 29 of the act herein referred to, the net value of the policy is to be computed on the four-and-a-half per cent. American mortality basis, so that the agreement in the contract to issue a paid-up policy by its terms, corresponds in every particular with the method proposed in the defendant's circular, and expressly referred

24—19 KAS.

to in the second paragraph of these findings. At the age of forty the expectation of life, according to the table of mortality based on American experience, is 28-18 years. At the same age, according to the defendant's published table rates, to secure one thousand dollars payable at death only an annual premium of $31.30 (or a single premium of $445.55,) would be required.

13th. Below the policy these words are conspicuously printed in large letters: "*Annual Life Policy — non-forfeiting after paying one annual premium;*" and indorsed on the policy, the following: "*Notice to Policy-Holders;*" and thereunder, "*Powers of agents: Agents are not authorized to make, alter or discharge contracts, waive forfeiture, or bind the company in any way;*" also, "*Restoration of Forfeited Policies.— In all cases of restoration of forfeited policies, and in all cases where the premium is received after the day on which it becomes due, and after the expiration of the thirty days of grace, although the policy may not have been formally canceled, the renewal or revival of the policy, in whatever form made, will be subject to a stamp tax the same as if a new policy had been issued.*"

14th. The insured, Lewis Twining, died at Topeka in this state, on the 24th of October 1871, from natural causes, and left surviving him, as his legal heirs and beneficiaries under the policy, his widow, Mary E., and his two children, Edward E. and Emma A., in whose names as plaintiffs this action is prosecuted. Notice and proof of death, according to the defendant's rules, was delivered to the secretary of the company at its office in St. Louis, Mo., on the 13th of March 1872, whereby any amount due became payable, by the terms of the policy, June 11th 1872, ninety days after service of notice and proof of death; and excepting the failure to pay the second annual premium, the insured observed and kept all the conditions required by the terms of the policy to be by him observed and kept.

15th. The net value of the policy in suit on the 15th of October 1871, the day the second annual premium was payable, computed by the rule herein referred to, was $164.64, which, according to the company's single-premium rates, would have purchased a paid-up policy on the life of a person at the age of forty, for $371.78; and the same net value, considered as a single premium of temporary insurance, would have carried a policy of $5,000 at the same age, one

year and nineteen days, and would have continued the policy sued on in force (assuming that the first year of insurance expired on the 15th of October 1871,) until the 3d of November 1872; and after deducting the foreborne premium of $156.50, with ten per cent. interest to June 11th 1872, $10.40, the balance on the last-mentioned day would be $4,833.10.

*Conclusions of Law.*—The court finds the law applicable to the foregoing facts, to be—

1st. In life insurance the premium is the consideration or compensation paid, or promised to be paid, by or in behalf of the insured, to the insurers for the risk assumed.

2d. It is competent for the parties to agree upon the terms of the insurance, and courts of law will enforce such contracts according to the ascertained intent of the parties.

3d. But if the terms of such contracts are ambiguous, the construction given thereto will not be favorable to the party whose exclusive or general business is to deal therein.

4th. When, by the terms of the policy, the risk of insurance does not commence until some consideration is paid, payment of the stipulated compensation for one year's insurance entitles the beneficiaries to an equivalent for the premium paid.

5th. When the first annual premium is paid, and it is optional with the beneficiary whether he will pay the second, a mere failure to do so at a stipulated time will not entitle the insurer to avoid his liability for one year's insurance.

6th. When the premium is payable annually on a day certain, if it is optional with the insurer whether he will receive it after that day, default in such payment will relieve him from liability beyond the time for which compensation has been received.

7th. As a general rule, an agent can bind his principal only while acting within the scope of his authority; but persons dealing with an agent may presume that he is so acting concerning his special employment, until some fact appears which would put an ordinarily prudent man on his guard.

8th. The holder of a policy of insurance is bound to take notice, not only of the terms of his contract as therein expressed, but he is also bound by all conditions and notices thereunder written or thereon indorsed at the time he received it, when the consideration for the contract is paid at the time of its delivery.

9th. An incorporated insurance company is a dealer in a special class of contracts, and is bound not only by the express letter of its contract, but as well by all circulars, notices, or other publications put forth by way of advertising its business and inducing persons seeking safe investments to patronize it.

10th. Where the insurer, by advertising-circulars, has promised to give thirty days' grace in the payment of premiums, and has recognized such days of grace by indorsements on policies, every policy-holder has a right to rely on such promise, and the effect of such promise would be to extend payment, and make the premium fall due on the last day of grace.

11th. A policy-holder may rely upon the statement of an agent employed to collect premiums, that payment of premiums would not be required until the last day of the month within which they became due, "and relying on such promise, a failure to pay before that time would not work a forfeiture, even within the express terms of the policy."

12th. The liability of the insurer to pay the sum mentioned in a policy on the annual life plan, is contingent on the death of the insured, and the payment of premiums according to contract which fell due and were payable before the death ensued. Where an extension of time, or credit, in the payment of premiums is given, and death ensues before the lapse of time so given, the policy is payable as before.

13th. Where a policy of life insurance is issued on the 15th of October 1870, and by its terms the first annual premium is due and payable on that day, and the policy is not to be binding until the first annual premium is paid, and such payment is made on the 24th of October 1870, and death ensued on the 24th of October 1871, and no subsequent annual premium is paid, there is no forfeiture by reason of default in subsequent payments.

14th. Where the insurer has, by advertising-circulars, stated that "all policies are non-forfeitable after one annual premium is paid," and that two methods have been by it adopted, between which policy-holders can choose and thereby avoid forfeiture; and where one method did not require any act to be done by the insured to indicate his choice, and the condition existed on which the application of the method was based, it may be presumed, in the absence of evidence to the contrary, that such method was chosen.

15th. Under the non-forfeiture method referred to in the third paragraph of the findings of fact, the policy of insurance sued on in this action was continued in force, and was binding upon the defendant at the time of the death of the insured, for by its previous publication (as an inducement to the public to contract with the defendant) it became a condition of every policy thereafter issued by the company (except when inapplicable as in paid-up policies,) not containing a clause expressly excluding it.

Therefore the court concludes, that the plaintiffs are entitled to recover the sum of $4,833.10, with interest thereon at the rate of seven per cent. per annum from June 11th 1872.

The foregoing are all the findings, both of facts and of law, as found by the court in the trial of said action. And thereupon, on the 26th of July 1875, the court found for the plaintiffs in the sum of $4,833.10, with interest thereon at the rate of seven per cent. per annum, from the 11th of June 1872 until the 26th of July 1875, and gave judgment in favor of said plaintiffs and against said defendant for said sum and costs of suit. Thereupon the defendant filed a motion in said court for a new trial of said action, assigning therein the following reasons, to-wit:

"1st, The decision of the court is not sustained by sufficient evidence, and is contrary to the law. 2d, The findings of the court are not sustained by sufficient evidence, and are contrary to law. 3d, The decision of the court is not sustained by the findings of fact in the case. 4th, The court erred in assessing the amount plaintiffs were entitled to recover, said assessment being too large. 5th, Error of law occurring at the trial of said action and duly excepted to by defendant. 6th, The court erred in the trial of said cause in admitting evidence offered by the plaintiffs and objected to by defendant. 7th, The defendant has, since the trial of said action discovered new and material evidence in this cause, which it could not with reasonable diligence have discovered and produced at the trial."

The transcript contains the following paragraphs:

"After said motion was filed the said court adjourned said term on said 26th of July, without day, and did not before adjourning make any order continuing said motion for a new trial to the next term, nor did said court at said term make

any general order continuing motions or other proceedings pending in said court to the next term thereof. After the court had so adjourned the clerk of the court, in pursuance of a verbal direction of the judge of the court made at some prior term of the court, entered the following as an order made by the court, to-wit:

"'Ordered by the court, that all motions, orders, demurrers, and all other matters not otherwise disposed of, be and the same are hereby continued until the next term of this court.'

"Afterward, on the 21st of December 1875, at the October term of said court, said defendant called up the said motion for a new trial for hearing, whereupon the plaintiffs objected to the consideration of the same, upon the grounds that the same had not been continued for hearing, and the defendant by not bringing said motion to hearing at the term when the same was filed had lost the right to make the same; but the court overruled the objection, to which ruling the plaintiff excepted; and said motion was thereupon heard by the court and overruled, and the defendant excepted, and thereupon the court for cause shown, gave the defendant twenty days to make and serve a case in this action; which was served within the time given."

I. Said case was duly made, served, settled, and signed; and plaintiff in error now brings such case to this court, and upon the same asks for a reversal of the judgment of the court below. The defendants in error object to any consideration of said case, claiming that the same is a nullity, and this they do on the following grounds, to-wit:

1. Motion for new trial; when may be heard.

1st, They claim that, as the court below did not by any formal or specific act continue said motion for a new trial, therefore that said motion became defunct on the adjournment of the court *sine die.* And 2d, that, as the statutes require that every case made for the supreme court, or a copy thereof, shall be served upon the opposite party or his attorney "*within three days after the judgment or order is entered,*" unless the court or judge for good cause shown shall extend the time for making and serving such case, (Laws of 1871, page 274; Laws of 1870, page 168,) and as the present case was not made or served within three days after the time when said judgment was rendered, and *as the court below did not*

*within said three days* make any order extending the time for making or serving said case, therefore that at the expiration of said three days the plaintiff lost all right to make a case for the supreme court for the purpose of reviewing said judgment, and the court below lost all power to extend that right or to give the plaintiff further time within which to make or serve his said case. Upon these grounds the defendants claim that the plaintiff's "case-made" is a nullity, and therefore that there is nothing for this court to consider in this case. Upon these preliminary questions presented to us by defendants in error, plaintiffs below, we would decide as follows:

1st. Said motion for a new trial did not become defunct by the adjournment of the court *sine die,* but it was continued to the next term of the court by the mere failure of the court to act upon it at the term at which it was filed.

2d. A case may be made for the supreme court and served upon the opposite party at any time within three days after an order is entered overruling a motion for a new trial, although such order may not be entered at the same time that the judgment in the case is rendered, nor even until the next term thereafter; and the court may, on entering said order overruling a motion for a new trial, extend the time still further for making and serving a case for the supreme court. (Laws of 1871, page 274; Laws of 1870, page 168.)

2. Case-made; within what time to be served.

II. We proceed therefore to an examination of the findings and testimony presented in the record, and a consideration of the whole case, upon its merits. There seems to be no dispute concerning the contents of said insurance policy, nor as to the indorsements thereon; and it is argued that one and only one premium has ever been paid, and that the insured died on the 24th of October 1871, just nine days after the second premium became due. Upon these facts alone the plaintiffs below would be entitled to recover a certain amount, but not the amount for which the court below rendered judgment. (*Life Ins. Co. v. Twining,* 12 Kas. 475, 482.) But the plaintiffs below claim that the other

Review of facts and findings.

facts in the case as found by the court below, together with the facts above mentioned, would authorize just such a judgment as was rendered. The defendant below however claims that these other facts are immaterial, but if material that they were not correctly found by the court below. This requires an examination of said findings in connection with the evidence.

The first finding states that the insurance company "through circulars published *prior to the 3d day of October 1870,* advertised some of its features," etc., and "two methods" "between which policy-holders could choose;" and the second and third findings simply state what these two methods were. These findings are supposed to be material because Twining, the insured, made his application for insurance on said 3d of October. The plaintiff in error claims that there is no evidence to support said first-mentioned finding, and we think the plaintiff in error is correct. The fourth finding states that "the defendant published for the government of its agents, and gave to them printed instructions to the effect that * * * the receipts for the renewal premium should be delivered only on payment of the premium on or before the day it is due *or within thirty days thereafter,* but not afterward," etc. The plaintiff in error claims that this finding is incorrect. We think it is correct as to such agents as Henry, but incorrect as to such agents as Stevens & Anderson. The fifth finding states that, "In 1869 the defendant employed one Alvin B. Hard as its agent to solicit applications and collect premiums for insurance, and furnished him advertising circulars," etc. The plaintiff in error claims that there is no evidence to sustain this finding, and we have been unable to find any such evidence. The sixth finding states that the agent Henry received a book and circulars and blanks from said Hard, etc. The plaintiff in error claims, and we think correctly, that there is no evidence to sustain this finding. The only evidence that we have found concerning Hard is as follows: Henry testifies that at one time "Hard was the reputed agent of the company, but not the regular agent," and

the words, "A. B. Hard, Agent," were printed on the last page of a little book delivered sometime between 28th December 1870 and 19th January 1871, by the agent Stevens to Twining.

The seventh finding states that the agent Henry delivered the policy first issued "to the insured on the 24th of the same month [October 1870,] and received $150.95 in full payment of the first all-cash premium for one year's insurance," etc. The plaintiff in error complains of this finding. The only evidence as to the time when said money was received is as follows: An entry in a book called "The Register of Policies," kept by the insurance company at Lawrence, shows by a tabular statement that said policy was received from the home office "*Oct. 17*," "Oct. 23," (but the word and figures "Oct. 17" have several ink lines drawn through them, as if intended to be erased,) and that $150.95 was received "Oct. 24, 1871." This entry contains other changes and erasures; and when the entry was made, or by whom it was made, is not shown. The changes and erasures were made (according to the testimony of the agent Stevens) on January 19th 1871, and probably the whole entry was made at that time, and by the same person. If the entry was made at any time during the year "1870," why was the year "1871" entered instead of 1870? Said money was not received "Oct. 24, 1871." The *year* is certainly wrong. It should be 1870, instead of 1871. And the agent Henry who received said money testified that the day of the month was also wrong. He testified that he received said money about the 16th or 17th of October 1870 — not later than the 20th of that month — and that he knew that he did not receive it on the 24th of said month, nor at any time later than the 20th. This evidence of Henry's was all embodied in a deposition, and was read to the court on the trial of the case. The foregoing is all the evidence there was upon this subject. The foregoing finding is supposed to be material because Twining died on October 24th 1871. There was no evidence showing that said money was received "in full payment of the first all-cash premium *for*

*one year's insurance.*" The policy itself shows that the insurance was an insurance *for life*, and that the first premium paid for an insurance of $5,000 absolutely and unconditionally up to October 15th 1871, and for a less amount ($371.78, as found by the court below,) after that time and for life upon the contingency, that no further premium should be paid. In any event the insurance was *an insurance for life* for some amount. But just what the amount of the insurance would be at any time after October 15th 1871, depended upon the future contingencies as to whether the subsequent premiums and how many of them would be paid. In this sense the policy was non-forfeitable. And there was no evidence outside of the policy showing that the first premium was to pay "for one year's insurance" from the time of payment. On the contrary, the agent Henry (who collected the first premium) testified as follows upon this subject:

"That at the time he delivered the policy to Mr. Twining it was stated that said policy would take effect from and after the date thereof; that he told Twining that said policy would take effect and be in force for one year from October 15th 1870, and that the money he received was to pay for the premium; that neither at time of delivering policy nor any other time did he tell Mr. Twining that if said premium was not paid on the 15th of October, or when due, that it would make no difference, nor did he ever use words to that effect, or ever convey to Mr. Twining any such impression; that he informed Twining at the time he delivered the policy to him that the premium must be paid promptly each year on the day it became due, that is, on the 15th day of October of each year; that he never told him anything to the contrary, and that he never at any time made any statement to Mr. Lewis Twining in any shape modifying either in words or substance, the terms or conditions of the policy."

The plaintiff in error also criticises the eighth finding of the court below. The material facts of the case are as we think substantially as follows: On the 3d of October 1870, Twining made an application to William Henry, an agent of the defendant insurance company, for an insurance on his own life, and in the application stated his age to be thirty-

nine years at his nearest birthday, while in fact he was forty years of age at his nearest birthday. The application was sent to the home office of the insurance company at St. Louis, where it was approved and a policy issued dated October 15th 1870, Twining's age being stated therein to be thirty-nine years, and the premium fixed at $150.95. This policy was sent back to the agent Henry at Lawrence, who delivered the same to Twining, and sometime, from the 16th to the 24th of October 1870, received the first premium on said policy, amounting to the sum of $150.95. On December 28th, then next, Stevens & Anderson became the agents for said insurance company at Lawrence, and about that time the said mistake in Twining's age was discovered. Also, about that time and afterward, Stevens gave to Twining various printed circulars issued by the insurance company, in one of which was the following:

"*All Policies Non-forfeitable After One Annual Premium.*— Another great advantage policy-holders in the 'Mound City' have, is, that they never need lose the benefit of their payments, as the company does not propose to speculate in the misfortunes of those who insure in it, but offers to all a full consideration for their money. Two methods are in use by the company, and its policy-holders can choose between them, viz.: paid-up policies, and temporary insurance.

"*Paid-up Policies.*— On the annual life plan, after one annual premium has been paid, if the policy-holder surrenders his policy within thirty days after failure to pay his premium, the company will issue him a *paid-up policy*, on the same plan as the first, for an amount determined as follows: The net value of the policy is computed at a date of lapse, on the four-and-a-half per cent. American mortality basis, and this net value, less any loans or other indebtedness that may exist against the former policy, is considered as single premium of insurance, and the amount it will purchase determined by the company's single-premium rates. On the ten or five-payment life plans, or any of the endowments, a paid-up policy will be issued (on the same conditions as above) for that fractional part of the sum originally insured, as the annual premiums paid are of whole number to be made. Thus, on the term payment life plan, one payment secures 1-5th, or 1-10th, as the case may be; two payments secure 2-5ths, or 2-10ths,

etc., etc. On the annual endowment, one payment secures 1-5th, 1-15th, 1-20th, 1-25th, or 1-35th, according to the plan; and on the five or ten-premium endowments, 1-5th, or 1-10th, as the case may be.

"*Temporary Insurance.*—A plan similar to that of the Massachusetts non-forfeiture law has been adopted by the 'Mound City,' the practical workings of which are as follows: If at any time after the first annual premium has been paid, the policy-holder should not be able to meet his renewal payments, the company will continue his policy in force until the net value of the policy is exhausted, and then the policy lapses according to its own terms. The net value of the policy at date of lapse is computed on the same assumptions as given before, and from this net value the amount of all outstanding loans against the policy is deducted, and four-fifths of what remains is considered as a single premium of temporary insurance, and the policy is continued in force for the length of time that this single premium will carry it. Should the policy-holder die within the period covered by this temporary insurance, the full amount of the policy will be paid by the company, less the sum of the foreborne premiums and ten per cent. interest thereon.

"The following table will explain the operation of this plan, the assumptions being that the premiums are all cash, and the period of temporary insurance dating from the time of lapse:

ORDINARY LIFE POLICIES.—AGES AT ISSUE.

| No. of premiums paid. | Age, 20 years. | | Age, 30 years. | | Age, 40 years. | | Age, 50 years. | | Age, 60 years. | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Years. | Days. | Years. | Days. | Years. | Days. | Years. | Days. | Years. | Days. |
| 1 | | 184 | | 275 | 1 | 19 | 1 | 64 | | 324 |
| 5 | 2 | 286 | 4 | 45 | 5 | 99 | 4 | 275 | 5 | 81 |
| 10 | 6 | 14 | 8 | 285 | 8 | 356 | 6 | 323 | 4 | 115 |
| 15 | 10 | 228 | 12 | 80 | 10 | 137 | 7 | 98 | 2 | 162 |
| 20 | 15 | 214 | 13 | 268 | 10 | 747 | 6 | 395 | 3 | 349 |

"*Features of the Mound City.*—All policies non-forfeitable after one annual premium is paid. Travel in the United States, British Provinces, Canada, or Europe, unrestricted. None but really extra-hazardous occupations restricted. A loan of one-third the premiums allowed if desired. Thirty days' grace allowed in payment of premiums. Especial attention is called to the non-forfeiture plans of this company. A great advantage this company has, is, the ability to make its investments in localities where high rates of interest prevail,

Opinion of the Court.

and where consequently better returns can be made to policy-holders. In the west and south, first-class real-estate loans bring from eight to ten per cent., while in the east six and seven per cent. are the best rates to be obtained.

"An annual premium of $100, compounded for twenty years at eight per cent. gives, $4,576.10; the same at six per cent.; $3,678,55; difference in favor of a western or southern company, $897.55. To a practical business man this is a point of great interest, as he can see by a glance the advantages a policy-holder in a company investing at eight per cent. has over one, whose company can only obtain six per cent.        A. B. HARD, *Agent, Lawrence, Kansas.*"

Stevens also at this time and afterward told Twining that he (Stevens) would receive the premium falling due in any particular month up to the first day of the next month thereafter. His testimony upon this subject is as follows:

"*Question.*–State what was the custom of the defendant, if it had established any, as to the payment of yearly premiums upon policies at the time such premiums became due.

"*Answer.*–The company had established no custom excepting in so far as I did it myself. I had established it so that if I got my money on the first of the month after it was due it was all I required.

" *Question.*–State whether you communicated any such fact to Twining.

"*Answer.*–I believe I did in taking his application for another policy. Twining called at our office occasionally. I. think the other policy was in February 1871. He was frequently in the office conversing about the other policy. .

" *Question.*–State what you said to Twining as to the practice of the company, and your practice, in requiring prompt payment of premiums, and as to whether you should require it.

"*Answer.*–I don't think I ever stated to him anything as to the custom of the company. One of the inducements that I held out to him for taking another policy was, that if he paid the money at any time during the month it would be sufficient; that I had to forward the money the first of every month, and if I could only have the money then it would be all I required; that if he paid the money at the first of the month after it became due, it would do; that I had to send off my report on the first of each month.   *   *   *

"I said we didn't care about having the money paid when due if it was only paid on the first of the month following. I was talking about the policy I then proposed to issue. I said, that if he paid the money at any time during the month it would be all we would require. Myself and my partner were the only agents here. I had to report once a month. I did not ask the company about it, and the company never authorized me to extend the time for payment of premiums on policies. I never told Twining about my power. All I told was, that if I had the money on the first day of the month it was all I required. It was before and after this policy in suit was executed that I talked about the time of paying the yearly premium. I can't say whether or not I ever told Twining I would extend the time of payment of premiums on the policy in suit." "I had no authority from the company to give credit for premiums until the first of the month succeeding the time when they became due. It was a matter of convenience to myself and the customer that I extended the time."

John Charlton then testified in behalf of plaintiff as follows:

"I am an insurance agent at Lawrence — both life and fire insurance. Have been in the business nearly seven years. I was acquainted with the custom of insurance companies by their agents at Lawrence as to receiving of annual life premiums during the years 1870 and 1871. It was the custom of such agents during those years to receive the annual premium falling due during the month at any time previous to the first day of the month following."

This is all the evidence there was upon this subject. One of the instructions of the insurance company to the agent Henry reads as follows:

"5th. Receipts for the renewal of premiums, signed by the president, or secretary, will be sent to you, which you will countersign and deliver on the payment of the premium, on or before the day on which it is due, or within thirty days thereafter, but not afterward, until a new certificate from the physician is sent to the office and returned to you approved. The agent will in person or by mail notify the applicant ten days previous to the time when the renewal premium is due; and if not paid when due the notice will be repeated."

The instructions of the company on the same subject to the agents Stevens & Anderson read as follows:

"13. You will be furnished with a register, in which you will enter all policies, and renewal receipts sent to you for collection.

"14. Renewal notices will be sent you in time to give policy-holders ample notice of their dues.

"15. When a renewal premium is paid, you will deliver the renewal receipts, first countersigning the same as evidence of payment to you. Renewal receipts must be signed by the president, (or vice-president,) or secretary of the company; *no others* are valid."

Sometime about the last of December 1870, or first of January 1871, said policy was returned to the company at St. Louis and canceled, and a new one was issued in lieu thereof just like the original in every respect except that it represented the age of Twining to be *forty* years instead of *thirty-nine*, and increased the annual premium to be $156.50 instead of $150.95 — the $5.55 increase being added because of the addition of one year in the age of the insured. This new policy was delivered to Twining, and he paid the additional amount of $5.55 on the first premium. This was about January 19th 1871. This new policy is the one now sued on. The second annual premium has never been paid. Whether the company ever gave Twining any special notice in writing of the time when said second premium became due, is not shown. On October 24th 1871, Twining died. The plaintiffs, who are the heirs of said Twining, after giving due notice then commenced this action on said new policy. The main question to be determined is, whether the plaintiffs are entitled to recover the whole amount ($5,000) for which the life of Twining was originally insured, (less the amount of the second annual premium,) or are entitled to recover only the amount of a paid-up policy to be determined according to the stipulations of said new policy. The plaintiffs (defendants in error) claim that they are entitled to recover the whole amount for which the life of Twining was originally insured. And they claim

Claims made by defendants in error, plaintiffs below.

the same upon the following grounds and for the following reasons:

1st. They claim that the insurance for $5,000 was absolutely unconditional and non-forfeitable in every respect and particular. They claim that the insured, by paying the first annual premium, purchased an absolute, unconditional, non-forfeitable insurance for $5,000 for the whole of his life, and that no subsequent · failure to pay any of the subsequent annual premiums could in any manner or degree destroy, lessen, or abridge such insurance, except possibly that the overdue premiums might be considered as debts due from the assured to the company, and might (after the death of the insured) be set off against the claims of the beneficiaries.

2d. The plaintiffs also claim that the first annual premium was not paid until October 24th 1870, notwithstanding the evidence of Henry to the contrary, and that by such payment the insured purchased an insurance for $5,000 for a full year from October 24th 1870, (and this, notwithstanding the policy and the evidence in the case,) and that the year for which such insurance was purchased did not terminate at the beginning of the 24th of October 1871, but that it included all.of that day. That is, we suppose that the plaintiffs will admit that in order for them to be entitled to the $5,000 insurance which they claim by virtue of said purchase, the insured must have died *within* the year for which such purchase was made, and that he did not die *after the completion of such year.* If so, then the plaintiffs in effect claim that a year is not ended with the close of the 365th day, or with the beginning of the 366th day, after the commencement of such year; but that it is ended only on the beginning of the 367th day. They in effect claim that a year, beginning on the first day of January of any year would not end at the close of the 31st day of December following, but would end only on the beginning of the 2d day of the next January, and that all of the first day of the second January would belong to the first year. And if this claim of the plaintiffs is correct, then it would seem to follow that a child born on any day of the year, would not be a year old

on the first anniversary of its birthday, but would be a year old only on the next succeeding day; that such anniversary would belong to the first year of its life, and not to the second; that a young man born on any day of the year would still be a minor on the 21st anniversary of his birthday, and must wait until the beginning of the next day before he could claim to be of full age; that three days' notice in any case would not be complete on the beginning of the fourth day after the service of the same, but would be complete only on the beginning of the fifth day after such service; that the twenty days given to a defendant within which to answer would not expire at the termination of the twentieth day after the return-day of the summons, but that the defendant would have the whole of the twenty-first day within which to answer. (*Contra*, see *Neitzel v. Hunter*, ante, p. 221.) Now while these things would seem to follow from the plaintiffs' claim in this respect, it is possible they would not follow. It is possible that in computing a year's time the 366th day (and the whole of it) may be considered as a mere point in time, indivisible, and at which or during which the year may be considered as completed or not completed as justice and the preservation and protection of rights would require. Usually (as laid down by the authorities) if the time is to be computed from an act, or from an act done, (as in this case,) the year would terminate at the close of the 365th day; but where the time is to be computed from a date or from the day of a date, the year would terminate only at the close of the 366th day.

3d. The plaintiffs also claim that, as the company issued certain circulars, one of which the agent Stevens handed to Twining, showing that the company, in order to prevent forfeitures and to save policies from lapsing, had adopted two methods of insurance, between which policy-holders could choose, designating one of said methods as "paid-up policies," and the other as "temporary insurance," and describing each, therefore that the plaintiffs may now choose the second method, although Twining at the very time he became a policy-holder, and afterward, by accepting said policy and

25—19 KAS.

holding it chose the first. The first method is simply the one stipulated for in the policy sued on in this case. The second method is as follows: Where a policy-holder fails to pay a premium the company will nevertheless continue the policy in force for the full amount of the insurance less said premium and interest as long as four-fifths of the net value of said policy, after deducting loans, will as a single premium carry such insurance. In the present case said insurance would have been carried nineteen days from the failure to pay the premium, and Twining died within that time.

4th. The plaintiffs also claim that, as the company instructed its agent Henry to give notice (written, or printed, and in addition to the notice given by the policy itself,) to policy-holders when their premiums became due, and as it was not shown in this case whether any such notice was ever given to Twining, or not, therefore that the plaintiffs should recover the full $5,000 insurance in this case.

5th. The plaintiffs also claim that the statements made by the agent Stevens to Twining concerning his (Stevens') custom to receive premiums at any time up to the first of the month next after they became due, and his statement that he would so receive Twining's premiums, taken in connection with the custom generally of insurance agents at Lawrence to receive the premiums coming due to their respective companies at any time up to the first of the month next after the same became due, constituted a waiver on the part of the insurance company itself of payment being made strictly within the time prescribed by the insurance policy, and therefore that neither Twining nor his heirs lost anything by failing to pay said second premium at the time it became due, which was October 15th 1871, or prior to the death of Twining, which occurred October 24th 1871, just nine days after said second premium became due, and this, notwithstanding the indorsements on Twining's policy stating that the insurance company's agents had no authority to make any waiver for the company.

Responding now to the foregoing claims made by defend-

ants in error, we decide the questions therein presented, as follows. As to the *first* and *second* claims: Twining did not by the payment of the first annual premium purchase an absolute, unconditional, non-forfeitable insurance for $5,000 for the whole of his life, nor for any other time extending beyond the 15th of October 1871. By said payment he purchased an insurance for said amount up to the 15th of said October, and after that time for such an amount (the court below finds it to be $371.78,) "fully paid up" as could have been purchased with the net value of the policy, and nothing more, with the privilege however of paying the subsequent annual premiums at the time they became due, and by such subsequent payments keeping the insurance up to $5,000. In this we simply reaffirm the decision made in this case when it was formerly here, and reported in 12 Kas. 475.

*3. Non-forfeiting policies; payment of premiums.*

As to the *third* claim: As Twining by accepting and holding his said policy chose one of the two methods of insurance adopted by the insurance company to prevent forfeitures, his heirs cannot now abandon that method and choose the other.

*4. Methods of insurance; option of assured.*

The *fourth* claim of defendants in error, plaintiffs below, is wholly untenable.

The *fifth* claim of defendants in error we are inclined to think is tenable. Good faith and fair dealing would hardly permit an insurance company to allow its agents to use words and acts which would naturally mislead the insured and then to take advantage of the mistakes or errors of the insured brought about by such words and acts. We shall assume that counsel for plaintiff in error are correct in construing that the indorsements on Twining's policy in effect state that no agent of the company has any authority to waive the time for the payment of any premium. And assuming that the indorsements so state, then they are not strictly true. The agent Henry, who procured for Twining his first policy, had authority from the company to waive payment of premiums after they became due for thirty

*5. Premiums, when payable; default; custom of agents; waiver of time.*

days.   And the company itself printed and published circu-
lars, copies of which Stevens gave to Twining both before
and after Twining's second policy was issued, stating, "Thirty
days grace allowed in payment of premiums."   Now Twi-
ning may have supposed that the agent Stevens who procured
said second policy had the same authority to waive the time
for the payment of premiums that Henry had.   And Twi-
ning may have supposed from said circulars alone that the
company would waive payment of premiums for thirty days.
Stevens stated to Twining before said second policy was is-
sued, as well as afterward, that he would receive the premi-
ums at any time after they became due up to the first of the
month next thereafter; and he made these statements before
the policy was issued to induce Twining to take said policy.
And it was the custom of Stevens, as well as of all the other
insurance agents at Lawrence, to receive premiums after they
became due up to the first of the month next thereafter.
Now it must be presumed that the insurance company knew
of the custom of its own agent.   A principal is always pre-
sumed to know what his agent does within the general scope
of his agency.   The knowledge of the agent in such cases
is the knowledge of the principal.   And as the agent at
Lawrence adopted this custom, and in pursuance thereof re-
ceived premiums up to the first of the month next after they
became due, it must be presumed that the insurance company
knew the same, and adopted the same.   There is no evidence
that the company ever found any fault with its agent for
adopting this custom, and Stevens was still its agent when
this suit was tried.   It must therefore be presumed that the
company itself adopted said custom; and if so, then the
statements of its agent Stevens to Twining, made in pursu-
ance thereof, would be binding upon the company — not per-
haps as a contract, but as a waiver of payment within the
strict time prescribed by the policy, which waiver Twining
had a right to depend on until notice should be given to him
that some other custom was adopted.   It would hardly seem
like justice for the agents of an insurance company to be

permitted to adopt some custom, and then to make statements (and we might almost say agreements) upon the strength of such custom, and then, after such custom and such statements and agreements have had their effect in inducing particular action or non-action on the part of the assured, for the company itself to come in and repudiate such custom, statements, and agreements. We think that under such circumstances neither Twining nor his heirs have lost anything by the failure to pay said second annual premium at the time it became due; and as Twining died before the first of the month next after the same became due, his heirs may now recover the full amount of the insurance, less the amount of said annual premium. If Twining had lived until after the first of the month next after his said premium became due, and had then died within thirty days after such premium became due, whether his heirs could recover such amount it is not necessary for us to decide in this case. That is, it is not necessary for us to decide (further than we have already decided) what the effect of the company's publishing that "Thirty days grace allowed in payment of premiums" would be in other cases. As tending to sustain the foregoing propositions with regard to waiver, and especially in cases where the words and acts of the company's agents would tend to mislead the policy-holder unless a waiver were presumed on the part of the company, we would refer to the following authorities: *N. Y. Life Ins. Co. v. McGowan*, 18 Kas. 300; *Helme v. Phila. Life Ins. Co.*, 61 Penn. St. 107; *Mayer v. Mutual Ins. Co.*, 38 Iowa, 304; *Thompson v. St. Louis Mut.*, 52 Mo. 469; *Ruse v. Mut. Ben. Life Ins. Co.*, 26 Barb. 556; *Ins. Co. v. Wilkinson*, 11 Am. Law Reg. 486, 495; *Howell v. Knickerbocker Life Ins. Co.*, 44 N. Y. 277.

The judgment of the court below will be affirmed.

All the Justices concurring.